D. S. CAGE & CO. et al. v. SOUTHERN RICE GROWERS' ASS'N et al. (No. 7769.)

(Court of Civil Appeals of Texas. Galveston. Jan. 2, 1920. Rehearing by Crosby Mercantile Co. Denied Jan. 22, 1920.)

CHATTEL MORTGAGES ☞117 — PARTICULAR CONTROLS OVER GENERAL DESCRIPTION.

In a mortgage on entire crop of 130 acres of rice to be planted on the B. farm, the particular description of the farm is controlling over the general description by number of acres, so that the mortgage would not include 30 acres planted on the J. farm, with the 100 acres actually planted on the B. farm, particularly where mortgagor was not contemplating planting the 30 acres when executing mortgage.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by the Southern Rice Growers' Association against D. S. Cage & Co. and others. Trial without a jury resulting in judgment in favor of the Crosby Mercantile Company, establishing a right to all the fund from sale of a quantity of rice, except a sufficient amount to pay a claim of intervener, Amos Fisher, and ordering costs and attorney's fees paid out of the fund in controversy, and the defendants Dalquist, D. S. Cage & Co., and F. G. Gillette appeal. Reversed and rendered.

Pleasant F. Graves and H. L. Livingston, both of Houston, for appellants.

Rowe & Kay, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by the Southern Rice Growers' Association to have determined the respective interests of all adverse claimants of a fund in the hands of the plaintiff arising from the proceeds of the sale of 329 sacks of rice, turned over to it, for sale on commission by the defendant E. T. Dalquist. The claimants of an interest in the fund who were made parties defendant, in addition to defendants E. T. Dalquist and wife Stella Dalquist, were D. S. Cage & Co., F. G. Gillette, and the Crosby Mercantile Company. Amos Fisher intervened in the suit, claiming an interest in the fund.

The defendant Crosby Mercantile Company claimed all the fund under a mortgage executed by defendants Dalquist and wife upon the crop of rice raised by them during the year 1917 upon 130 acres of land in Harris county, described in the mortgage as being upon the John Bloom farm. The defendant Cage & Co. claimed $289.65 of said fund under an assignment from the defendant E. T. Dalquist. The defendant Gillette also claimed $110.16 of said fund under an assignment from said Dalquist. The intervener Amos Fisher claimed under a mortgage from defendant Dalquist, upon the rice grown upon 30 acres of the 130 acres of land cultivated by him during the year 1917, which was not on the John Bloom farm.

The trial in the court below without a jury resulted in a judgment in favor of the defendant Crosby Mercantile Company, establishing the right of said defendant to all of the fund, except a sufficient amount thereof to pay the claim of the intervener, Amos Fisher, who was adjudged to have a first lien upon the rice raised on the 30 acres of land found not to be on the John Bloom farm. The costs and attorney's fee allowed plaintiff were ordered paid out of the fund in controversy, and the remainder of the fund was ordered paid to the Crosby Mercantile Company and the intervener, Amos Fisher, as above stated.

The defendants Dalquist, Cage & Co., and F. G. Gillette have each appealed from the judgment.

The facts are undisputed. The fund in controversy is the proceeds of the sale of 329 sacks of rice, raised by defendant Dalquist during the year 1917 on 130 acres of land in Harris county; 100 acres of the land being on the farm of John Bloom, and 30 acres on the adjoining farm of Gus Johnson. One hundred sacks of this rice was grown on the Gus Johnson farm, and 229 sacks on the John Bloom farm.

On April 16, 1917, E. T. Dalquist and wife, Stella Dalquist, for the purpose of securing the Crosby Mercantile Company in an indebtedness owing by them to said company on a note and open account in the sum of more than $2,000, executed and delivered to said company a mortgage upon their crop, which they described as follows:

"Our entire crop of rice consisting of about (130) one hundred and thirty acres, now in process of being planted on land rented from John Bloom, also all our crop of cotton, consisting of ten acres, above crops on land rented from John Bloom about 11 miles S. E. of Crosby, in Harris county, Texas."

E. T. Dalquist had rented from John Bloom for the year 1917 about 150 acres of his farm in Harris county, and at the time this mortgage was executed contemplated planting 130 acres of said land in rice. There is some conflict in the testimony as to whether he did plant 130 acres of this land in rice, but the great weight of the evidence sustains the conclusion that he did plant 130 acres in rice on said farm, but only got a stand on, and cultivated 100 acres of rice on that farm. Subsequent to the execution of this mortgage he rented 30 acres of land on the Gus Johnson farm near or adjoining the John Bloom farm. He planted this 30 acres in rice, and on this crop executed a mortgage to secure the intervener, Amos Fisher, in the payment of a note for $100. He delivered the rice from both farms to the plaintiff for sale, and the fund in controversy, which was paid into the registry of the court by plaintiff, is the proceeds of said sale. After the rice was delivered to plaintiff, Dalquist assigned to defendants Cage & Co. and F. G. Gillette the respective amounts claimed by them, to be paid from the proceeds of the sale of the rice grown on the Gus Johnson 30 acres. These assignments were made in satisfaction of indebtedness due by him to said defendants.

We cannot agree with the learned trial judge in his holding that the mortgage executed by Dalquist and wife covered the crop raised by him on the Gus Johnson land. It seems to us that by its terms it is restricted to the rice raised on the John Bloom farm. It is true that it describes the mortgaged property as "our entire crop" of 130 acres, but it expressly states that the crop is to be planted and grown on the John Bloom farm, and we are of opinion that this

definite, particular description should control the more general description. If, however, this conclusion is not sound, and it should be held that the description is ambiguous, the undisputed evidence shows that the crop on the Johnson farm was not intended to be included in this mortgage. At the time the mortgage was written Dalquist was not contemplating planting a rice crop on the Johnson 30 acres, but did intend to plant 130 acres on the Bloom farm.

Upon these facts the Crosby Mercantile Company acquired no lien by its mortgage upon the rice raised on the 30 acres on the Johnson farm, and was entitled to no part of the proceeds of the sale of that rice. It follows from these conclusions, that the judgment of the court below should be reversed, and judgment here rendered denying the Crosby Mercantile Company any part of the proceeds of the sale of the 100 sacks of rice raised on the Johnson farm, and awarding the balance of such proceeds, after the payment of the amount adjudged the intervener, Amos Fisher, to the appellants D. S. Cage & Co. and Fred G. Gillette in proportion to their respective claims; and it has been so ordered.